### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### NORTHERN DIVISION

**JENNY AUSTIN**                                                                    **PLAINTIFF**

**V.**                                    **NO. 3:22-CV-00100-JTK**

**COMMISSIONER OF**
**SOCIAL SECURITY ADMINISTRATION**                          **DEFENDANT**

### ORDER

## I.   Introduction:

Plaintiff, Jenny Austin ("Austin"), applied for disability benefits on January 5, 2018, alleging a disability onset date of July 15, 2015.[1] (Tr. at 15). The claim was denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Austin's application on July 28, 2021. (Tr. at 29). The Appeals Council denied her request for review. (Tr. at 1-4). The ALJ's decision now stands as the final decision of the Commissioner, and Austin has requested judicial review.

For the reasons stated below, the Court[2] affirms the decision of the Commissioner.

## II.   The Commissioner's Decision:

The ALJ found that Austin had not engaged in substantial gainful activity

---

[1] Austin later amended her onset date to January 1, 2019. *Id*.
[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

since the alleged onset date of January 1, 2019.[3]  (Tr. at 18). The ALJ found, at Step Two, that Austin had the following severe impairments: migraine headaches, seizure disorder, bilateral carpal tunnel syndrome, cervical degenerative changes, left shoulder degenerative changes, diabetes mellitus, tachycardia, autonomic neuropathy, obesity, anxiety, and depression. *Id*.

After finding that Austin's impairments did not meet or equal a listed impairment (Tr. at 19-21), the ALJ determined that Austin had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional limitations: (1) she can no more than occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; (2) she can no more than occasionally balance stoop, kneel, crouch, and crawl; (3) she cannot tolerate exposure to hazards, such as unprotected heights, vibration, and dangerous moving machinery; (4) she cannot drive; (5) she can tolerate only occasional exposure to atmospheric conditions such as fumes, noxious odors, dust, mists, gases, and poor ventilation; (6) she can never work in loud or very loud noise environments; (7) she is limited to less than

---

[3] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

constant use, but can frequently use the upper extremities to reach, handle, finger, and feel; (8) she can only occasionally overhead reach with the upper extremities; and (9) she is limited to simple, routine, repetitive work, and simple work-related decisions. (Tr. at 21).

At Step Four, the ALJ determined that Austin is unable to perform any of her past relevant work (the ALJ noted that Austin had worked occasionally during the relevant time-period). (Tr. at 28). Relying upon testimony from a Vocational Expert ("VE"), the ALJ found, based on Austin's age, education, work experience and RFC, that he could perform work in the national economy. (Tr. at 23-24). Representative positions were Price Tag Ticketer, Cafeteria Assistant, and Sales Attendant. *Id.* Therefore, the ALJ concluded that Austin was not disabled. *Id*.

III.   **Discussion**:

A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

B. Austin's Arguments on Appeal

Austin contends that the evidence supporting the ALJ's decision is less than substantial. She argues that: (1) the ALJ failed to resolve a conflict at Step Five; (2) the ALJ did not properly evaluate the opinion of Dr. Dennis Vowell, PsyD; (3) the ALJ failed to fully consider Austin's conversion disorder; and (4) the ALJ did not fully consider Austin's alleged absenteeism due to medical treatment.

At Step Five, an ALJ must ensure that a VE's testimony is sufficiently supported. Before relying on VE evidence to support a determination that a claimant is not disabled, the ALJ has an affirmative responsibility to ask about "any possible conflict" between VE testimony and the Dictionary of Occupational Titles ("DOT"), and to obtain an explanation for any such conflict. *Renfrow v. Colvin*, 496 F.3d 918, 920-21 (8th Cir. 2007). Austin contends that because the jobs identified by the VE required frequent reaching and the RFC limited Austin to occasional reaching, she could not perform the representative jobs. (Doc. No. 17 at 5). More specifically, she argues that the ALJ failed to resolve this conflict.

The ALJ *did* ask the VE to resolve any underlying conflicts, and the VE specifically addressed reaching, stating:

> Your Honor, let me just first address that occasional overhead reach, which that limitation is not specifically addressed in the DOT. My answer is based on how the jobs described in the DOT [are] being performed and I use my knowledge, training, education, and experience to equate it within your hypotheticals.

(Tr. at 134-135). The ALJ then directly addressed this response in his opinion and found that the VE's explanation was sufficient. (Tr. at 28-29). In multiple District Court cases where a VE recognizes a conflict, brings it up at the hearing and gives multiple reasons to explain how he considered it, the Court has found that the ALJ has met his burden at Step Five. *See Porter v. Berryhill*, 2018 U.S. Dist. LEXIS

37141 *42 (W.D. Mo. Mar. 7, 2018); *Yeley v. Berryhill*, 2018 U.S. Dist. LEXIS 154465 *26-28 (E.D. Mo. Sept. 11, 2018); *Smith v. SSA*, 2020 U.S. Dist. LEXIS 240226 *7 (E.D. Ark. Dec. 22, 2020). In those cases, the VE pointed to his knowledge, education, and experience, or some combination thereof, to explain his conclusions. The ALJ in this case properly assessed the potential reaching conflict.

Austin brings up another argument that there was a conflict at Step Five, which is a red herring argument. She points to a job the VE identified as available if the exertional level dropped down to sedentary. (Tr. 21, 135-136). She says that the RFC limitation to simple work preclude her from performing this job, which required Level 3 reasoning. (Doc. No. 17 at 9). All three jobs identified at the light exertional level only required Level 2 reasoning, which does not present a conflict with simple work. This argument fails.

Next, Austin finds fault with how the ALJ evaluated the opinion of Dr. Vowell, a psychological examiner who only saw Austin once, on August 30, 2019. Dr. Vowell observed grossly normal mental examination findings, including clear and coherent speech, and concrete thought-processes. (Tr. at 1981). Austin herself told Vowell that she was "doing ok but feels so anxious." *Id*. Vowell diagnosed conversion disorder and found that psychological symptoms would interfere with day-to-day functioning. (Tr. at 1981-1984).

The ALJ discussed Dr. Vowell's opinion, but found it to be unpersuasive (Tr. at 27). On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017); *Bonnett v Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021); *Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 U.S. Dist. LEXIS 110370 at *4 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

The ALJ did give good reasons for discounting the opinion of Dr. Vowell. He explained that the opinion was based largely on subjective complaints of Austin. (Tr. at 27). Subjective complaints alone, without credible supporting medical evidence, are not sufficient to establish a disabling condition. *See Reter v. Railroad Retirement Board*, 465 F.3d 896, 899 (8th Cir. 2006). The ALJ also wrote that clinical

7

examinations did not support Dr. Vowell's limitations. *Id*. Indeed, over the relevant time-period, Austin usually presented with only mild psychiatric symptoms, and often had good insight and judgment and average intellect. (Tr. at 25). Finally, the ALJ pointed to Austin's, daily activities, which undermined her allegations that she was totally disabled. Austin previously said that she could drive, use Facebook, attend to personal care, care for her parents, and travel out-of-state. (Tr. at 26, 108, 118, 120, 827). Inconsistencies between subjective complaints of pain and daily living patterns diminish credibility. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). The ALJ also noted that Austin improved with treatment, and Austin admitted that situational stressors often caused her dysfunction. Situational stressors do not suggest an entitlement to disability benefits. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001).

The ALJ gave good reasons for his evaluation of Dr. Vowell's opinion. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c) (adjudicator considers opinion more persuasive if it is supported by explanation and relevant objective medical evidence, and is consistent with other evidence in record); *see Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (evaluation of doctors' opinion proper, as case was not close call, and record otherwise contained substantial evidence establishing matter at issue).

Finally, Austin argues that the ALJ did not properly consider Austin's conversion disorder or her absenteeism. Contrary to that assertion, the ALJ did mention that Austin had a conversion disorder[4] with psychogenic, non-epileptic seizures; he also discussed therapy notes addressing possible causes, including insufficient sleep, family dysfunction, and stress. (Tr. at 24-25). Daily sleep patterns and family stress are not generally viewed as a basis for a finding of total disability.

Moreover, elsewhere throughout the decision, the ALJ discussed mental symptoms experienced by Austin, and how they affected her daily life. He fully accounted for Austin's conversion disorder.

While Austin contends that the ALJ erred when he did not specifically include likelihood of absenteeism in the RFC, this argument fails. The burden is on the claimant to prove her medical appointments would make her miss work. Many Courts have rejected arguments that doctor's appointments would cause unreasonable absenteeism. *Greenwade v. Saul*, No. C18-119-LTS, 2020 U.S. DIST LEXIS 48588 *6-7 (N.D. Iowa Mar. 20, 2020) (citing collected cases). There is no reason that Austin could not attend treatment session over a lunch-hour or outside of regularly scheduled work hours. *Id.* And an RFC is not required to mechanically list

---

[4] Conversion disorder creates disruptions in your brain that cause physical symptoms. The symptoms of conversion disorder can vary widely depending on the part of the brain involved. https://my.clevelandclinic.org/health/diseases/17975-conversion-disorder#symptoms-and-causes

every possible limitation. So the failure to include absenteeism in the RFC was not error.

## IV.  <u>**Conclusion**</u>:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ did not err at Step Five, and he properly considered the opinion of Dr. Vowell, as well as Austin's conversion disorder and alleged absenteeism. The finding that Austin was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 17th day of April, 2023.

_____
UNITED STATES MAGISTRATE JUDGE